IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MR. SANDLESS FRANCHISE, LLC,     :    CIVIL ACTION
                           :    NO. 19-01267
        Plaintiff,       :
                           :
     v.                  :
                           :
KAREN CESARONI LLC, et al.,     :
                           :
        Defendants.     :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.               October 29, 2020

## I.   INTRODUCTION

This case involves claims by Mr. Sandless Franchise, LLC ("MSF") against: (1) a former franchisee, Karen Cesaroni LLC ("KCLLC"); (2) KCLLC's owners, Karen and Roldo Cesaroni; and (3) the Cesaronis' newly-formed company, New England Wood & Tile Services LLC (collectively, the "Cesaroni Parties") for breach of contract, service mark infringement, and unfair competition, inter alia.

In response, the Cesaroni Parties bring counterclaims against MSF for breach of contract, inter alia, and name the following parties as additional counterclaim defendants: (1) MSF's CEO, Daniel J. Prasalowicz; (2) another Mr. Sandless

franchisee, Mr. Sandless Central Massachusetts ("MSCM"); and (3) MSCM's owner, Frank Pupillo.[1]

MSCM and Pupillo move to dismiss the counterclaims against them for lack of personal jurisdiction and failure to state a claim. MSF and Prasalowicz move to dismiss the counterclaims against them for failure to state a claim.[2]

For the reasons described below, the Court will grant MSCM and Pupillo's Motion to Dismiss for lack of personal jurisdiction. The Court will also grant the Motion to Dismiss Counts V and VI against Prasalowicz for failure to state a claim and will deny MSF and Prasalowicz's Motion to Dismiss the remaining counterclaims against them.

## II.   BACKGROUND[3]

MSF, a Pennsylvania franchisor, licenses the "Mr. Sandless" trademark used in connection with wood floor refinishing

---

[1]   For the purposes of the pending Motions to Dismiss, the Court will assume without deciding that the additional counterclaim defendants are properly joined as parties to the action. See Fed. R. Civ. P. 13(h).

[2]   On November 1, 2019, the Court granted in part and denied in part the counterclaim defendants' previous Motions to Dismiss the counterclaims brought under three theories: (1) lack of personal jurisdiction as to MSCM and Pupillo; (2) improper venue as to MSCM and Pupillo; and (3) failure to state a claim as to all counterclaim defendants. The Court dismissed the counterclaims for breach of contract, tortious interference, and civil conspiracy (based on tortious interference) without prejudice for failure to state a claim. The Court dismissed the counterclaims for fraudulent inducement and civil conspiracy (based on fraudulent inducement) with prejudice as time barred. The Order made no determination regarding personal jurisdiction or venue and dismissed those arguments without prejudice. Order Den. in Part, Granting in Part Countercl. Defs.' Mots. Dismiss, ECF No. 38.

[3]   As required at the motion to dismiss stage, the Court accepts all well-pled factual allegations as true. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

services. In 2012, KCLLC entered into a franchise agreement with MSF to operate a Mr. Sandless franchise in Massachusetts. The Cesaroni Parties allege MSF represented to them orally and in writing that the franchise territories acquired by KCLLC would be "exclusive"——i.e., other providers of Mr. Sandless goods and services would be excluded from those territories.

The franchise agreement between MSF and KCLLC contains a provision for special treatment of "Regional Accounts," which are Mr. Sandless customers with five or more businesses "whose presence is not confined within any one particular designated territory." Am. Answer to First Am. Compl. ¶ 161, ECF No. 84. Under the franchise agreement, MSF has "the exclusive right . . . to negotiate and enter into agreements or approve forms of agreement to provide services to Regional Accounts, licensees or franchisees, including locations within [KCLLC's] Designated Territory." Id. The agreement also provides that, with respect to any "contract with or the acceptance of a bid by a Regional Account which contemplates the provision of services to one or more Regional Accounts located within [KCLLC's] Designated Territory, KCLLC has the option to perform such services." Id.

The Cesaroni Parties allege that MSF and Prasalowicz entered into a continuing agreement with MSCM and Pupillo to service a large Mr. Sandless customer with multiple facilities in KCLLC's exclusive territory and did not disclose this

3

agreement to KCLLC. They allege MSCM and Pupillo performed interfering activities "outside business hours and under cover of darkness" to avoid detection by KCLLC. Id. ¶ 170.

The Cesaroni Parties learned of this activity by "happenstance" around December of 2016. Id. ¶ 172. When KCLLC confronted Prasalowicz, he represented that the customer at issue was a "Regional Account" within the meaning of the franchise agreement. Id. ¶ 175. The Cesaroni Parties allege MSF was contractually obligated to give KCLLC the option of serving the customer before presenting the opportunity to another Mr. Sandless franchisee, and that MSF continued to authorize and arrange for MSCM and Pupillo to service customers in violation of KCLLC's rights through the termination of KCLLC's franchise in November 2018.

The counterclaims currently before the Court arise from the alleged agreement between MSF/Prasalowicz and MSCM/Pupillo to perform Mr. Sandless services in KCLLC's exclusive territory. The Cesaroni Parties bring the following counterclaims:

| | |
|---|---|
| Count I: | Breach of contract (KCLLC v. MSF) |
| Count II: | Interference with contract (KCLLC v. MSCM and Pupillo) |
| Count III: | Interference with prospective contractual relations (KCLLC v. Prasalowicz, MSCM, and Pupillo) |

4

Count IV:     Civil conspiracy
              (KCLLC v. MSF, Prasalowicz, MSCM, and
              Pupillo)

Count V:      Relief under federal trademark law
              (The Cesaroni Parties v. MSF and
              Prasalowicz)

Count VI:     Relief under Pennsylvania Trademark and
              Trade Secrets Acts
              (The Cesaroni Parties v. MSF and
              Prasalowicz)

## III. LEGAL STANDARD

Courts evaluate a motion to dismiss a counterclaim under
the same standard as a motion to dismiss a complaint. See, e.g.,
Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir.
2011). A party may move to dismiss a complaint for lack of
personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In deciding a
motion to dismiss for lack of jurisdiction, "a court is required
to accept the [counterclaim plaintiff's] allegations as true,
and is to construe disputed facts in favor of the [counterclaim
plaintiff]." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324,
330 (3d Cir. 2009) (quoting Toys "R" Us, Inc. v. Step Two, S.A.,
318 F.3d 446, 457 (3d Cir. 2003)).

A party may also move to dismiss a complaint for failure to
state a claim upon which relief can be granted. Fed. R. Civ. P.
12(b)(6). When reviewing such a motion, the Court is "required
to accept as true all allegations in the complaint and all
reasonable inferences that can be drawn from [the allegations]
after construing them in the light most favorable to the non-

movant." <u>Conard v. Pa. State Police</u>, 902 F.3d 178, 182 (3d Cir. 2018) (quoting <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).

## IV.  DISCUSSION

### A.  <u>Personal Jurisdiction</u>

MSCM and Pupillo move to dismiss the counterclaims against them for lack of personal jurisdiction. "The burden of demonstrating the facts that establish personal jurisdiction" falls on the party asserting such jurisdiction. <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324, 330 (3d Cir. 2009) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002)). If a counterclaim defendant raises a jurisdictional defense, "the [counterclaim plaintiff] must 'prov[e] by

affidavits or other competent evidence that jurisdiction is proper.'" Id. (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)). If the district court does not hold an evidentiary hearing, a counterclaim plaintiff "need only establish a prima facie case of personal jurisdiction." Id. (quoting O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007)).

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits. Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute gives its courts jurisdiction over out-of-state defendants to the maximum extent allowed by the U.S. Constitution. 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b) (West 2020).

Consistent with the Due Process Clause of the Fourteenth Amendment, a federal court may exercise personal jurisdiction over a non-resident defendant on two bases: (1) general jurisdiction and (2) specific jurisdiction. General jurisdiction exists where a defendant's contacts with the forum "are so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Where general jurisdiction is present, a court has personal jurisdiction over the defendant

7

"even if the plaintiff's cause of action arises from the defendant's non-forum related activities." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citing Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 n.3 (3d Cir. 1996)).

In contrast, specific jurisdiction "is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." Id. (quoting Vetrotex, 75 F.3d at 151) (internal quotation marks omitted). When a defendant challenges personal jurisdiction, a plaintiff must establish the following elements with "reasonable particularity" to demonstrate that the court's exercise of specific jurisdiction comports with the Due Process Clause: "'First, the defendant must have "purposefully directed [its] activities" at the forum.' Second, the plaintiff's claims 'must "arise out of or relate to"' the defendant's activities. And third, exercising personal jurisdiction must not 'offend traditional notions of fair play and substantial justice.'" Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 129–30 (3d Cir. 2020) (citations omitted).

MSCM and Pupillo argue the Court lacks personal jurisdiction over them because they do business only in Massachusetts and Rhode Island and lack the constitutionally

8

required minimum contacts with Pennsylvania. The Cesaroni Parties concede the Court lacks general jurisdiction over MSCM and Pupillo but contend the Court has specific jurisdiction based on the following contacts MSCM and Pupillo had with the forum: MSCM/Pupillo entered into a franchise agreement in Pennsylvania with MSF, a Pennsylvania company; MSCM/Pupillo attended training in Pennsylvania; MSCM/Pupillo agreed to litigate any franchise-related disputes with MSF in Pennsylvania; and MSCM/Pupillo "conspired with [MSF] to violate the contractual rights of another franchisee who . . . had entered into a substantially identical Pennsylvania law-governed franchise agreement, in Pennsylvania, with [MSF]." Countercl. Pls.' Br. Opp'n to Countercl. Defs.' Mot. Dismiss 11, ECF No. 88.

The Cesaroni Parties also invoke the absent co-conspirator doctrine. While the Third Circuit Court of Appeals has not expressly adopted this theory of jurisdiction, district courts in this circuit have adopted it under "certain circumstances." Doe v. Hesketh, 15 F. Supp. 3d 586, 595 (E.D. Pa. 2014) (quoting Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 846 F. Supp. 374, 379 (E.D. Pa. 1994), aff'd, 107 F.3d 1026 (3d Cir. 1997)). Under the theory, the Court "imputes the contacts of the 'resident' co-conspirator over whom it has jurisdiction to the 'foreign' co-conspirator to see if there are sufficient contacts

9

to exercise jurisdiction over the latter." Id. (quoting Mass. Sch. of L., 846 F. Supp. at 379). However, "[m]erely belonging to a civil conspiracy does not make a member subject to the jurisdiction of every other member's forum." Mass. Sch. of L., 846 F. Supp at 379. To succeed in establishing jurisdiction under this theory, a plaintiff "must allege that substantial acts in furtherance of the conspiracy occurred within the forum state and that the foreign defendant was, or should have been, aware of them." Hesketh, 15 F. Supp. 3d at 595.

The Cesaroni Parties fail to plead that substantial acts in furtherance of the alleged conspiracy occurred in Pennsylvania. Nor do they sufficiently plead that their claims against MSCM and Pupillo arise from "a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." Remick, 238 F.3d at 255 (quoting Vetrotex, 75 F.3d at 151). The contacts they allege MSCM and Pupillo had with the forum, including traveling to Pennsylvania for training and entering into a contract with MSF in the forum state, are insufficient to establish the minimum contacts required to satisfy due process because the Cesaroni Parties' counterclaims do not arise out of those contacts. The allegedly tortious behavior at issue (MSCM and Pupillo's servicing customers in KCLLC's exclusive territory) took place in Massachusetts, not Pennsylvania. Further, MSCM/Pupillo's

agreement to litigate any franchise-related disputes with MSF in Pennsylvania cannot confer jurisdiction because the agreement does not govern disputes between MSCM/Pupillo and other franchisees.

For these reasons, the Court will grant the Motion to Dismiss the Cesaroni Parties' counterclaims against MSCM and Pupillo for lack of personal jurisdiction.[4]

**B.**   **<u>Failure to State a Claim</u>**

Following dismissal of the counterclaims against MSCM and Pupillo for lack of personal jurisdiction, the following counterclaims against MSF and Prasalowicz remain:

|  |  |
|---|---|
| Count I: | Breach of contract<br>(KCLLC v. MSF) |
| Count III: | Interference with prospective contractual relations<br>(KCLLC v. Prasalowicz) |
| Count IV: | Civil conspiracy<br>(KCLLC v. MSF and Prasalowicz) |
| Count V: | Relief under federal trademark law<br>(The Cesaroni Parties v. MSF and Prasalowicz) |
| Count VI: | Relief under Pennsylvania Trademark and Trade Secrets Acts<br>(The Cesaroni Parties v. MSF and Prasalowicz) |

---

[4]     MSCM and Pupillo also move to dismiss the counterclaims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court will grant MSCM and Pupillo's Motion to Dismiss pursuant to Rule 12(b)(2), it need not reach the movants' alternative arguments.

MSF and Prasalowicz argue the Court should dismiss the remaining counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) because: (1) the contractual limitations period bars Counts I, III, and IV; (2) the gist of the action doctrine bars Counts III and IV; (3) the parol evidence rule bars evidence needed to plead Count I; (4) Prasalowicz is not a plaintiff in the original action and the Cesaroni Parties do not plausibly allege bad faith, as needed to state claims for Counts V and VI; (5) the Cesaroni Parties agreed to mediate, rather than litigate, any claims related to the franchise agreement; and (6) Prasalowicz cannot be sued in his individual capacity because he was acting within the scope of his employment. For the following reasons, the Court will grant the Motion to Dismiss Counts V and VI against Prasalowicz and will deny the Motion to Dismiss the remaining counterclaims against MSF and Prasalowicz for failure to state a claim.

### 1.   Contractual Limitations Period

First, MSF and Prasalowicz argue the Court should dismiss Counts I, III, and IV because the franchise agreement between the parties requires the Cesaroni Parties to bring any claims arising out of the agreement within one year of the alleged wrong. The relevant portion of the agreement states:

> You agree that no cause of action
> arising out of or under this Agreement may

> be maintained by you against us unless
> brought before the expiration of (i) one (1)
> year after the act, transaction, or
> occurrence upon which the action is based;
> or (ii) one (1) year after you became aware
> of facts or circumstances reasonably
> indicating that you may have a claim against
> us under this Agreement, whichever occurs
> first. Any action not brought within this
> period shall be barred as a claim,
> counterclaim or defense.

First Am. Compl. Ex. 1, at 145, ECF No. 62.

The Cesaroni Parties argue their counterclaims are not subject to the contractual one-year limitation because the provision is unconscionable.[5] Under Pennsylvania law, a court may decline to enforce a contractual clause that is unconscionable. 13 Pa. Stat. and Cons. Stat. Ann. § 2302(a) (West 2020). To establish unconscionability, a party must show that the provision at issue was "both substantively and procedurally unconscionable." Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012) (citing Salley v. Option One

---

[5]     The Cesaroni Parties also challenge the following provisions of the franchise agreement as unconscionable: non-reciprocal alternative dispute resolution provisions, accelerated payment requirements, an asymmetrical punitive damages waiver, a one-sided attorneys' fees provision, and an unfair indemnification clause. At oral argument on the previous Motions to Dismiss the counterclaims held on October 22, 2019, counsel for the Cesaroni Parties argued that the Court should sever any unconscionable terms and enforce the remainder of the franchise agreement, which provides the basis for the breach of contract counterclaim. Oral Arg. Tr. 32:19-22, ECF No. 46 ("We think that all of the unconscionable terms can be and must be nullified and that the agreement itself . . . is not in its entirety nullified."). Because the Cesaroni Parties do not ask the Court to nullify the entire franchise agreement based on the allegedly unconscionable provisions, at this stage of the litigation the Court need only determine the conscionability of the one-year limitations period.

Mortg. Corp., 925 A.2d 115, 119 (Pa. 2007)). A contract is substantively unconscionable if it "unreasonably favors the party asserting it." Id. (citing Salley, 925 A.2d at 119). A contract is procedurally unconscionable where "there was a lack of meaningful choice in the acceptance of the challenged provision." Id. at 235 (quoting Salley, 925 A.2d at 119).

In support of a finding of unconscionability, the Cesaroni Parties highlight that the one-year limitations provision is asymmetrical—i.e., it applies only to the Cesaroni Parties—and that the franchise agreement is a contract of adhesion. For their part, MSF and Prasalowicz allege that courts routinely uphold similar provisions, and that the Cesaroni Parties had a meaningful choice about whether to accept the franchise agreement's terms.

Pennsylvania law permits parties to agree via contract to limitations periods shorter than those prescribed by statute if the agreed-upon timeframe is "not manifestly unreasonable." 42 Pa. Stat. and Cons. Stat. Ann. § 5501(a) (West 2020). Courts in this jurisdiction "have routinely held that a one-year statute of limitations is not manifestly unreasonable." Vino 100, LLC v. Smoke on the Water, LLC, No. 09-4983, 2011 WL 2604338, at *4 (E.D. Pa. July 1, 2011) (citing Lardas v. Underwriters Ins. Co., 231 A.2d 740, 741-42 (Pa. 1967); Smith v. Am. Equity Ins. Co., 235 F. Supp. 2d 410, 412 (E.D. Pa. 2002); Caln Vill.

14

Assocs., L.P. v. Home Indem. Co., 75 F. Supp. 2d 404, 410–11
(E.D. Pa. 1999)). Courts in this jurisdiction have also upheld
such provisions when they are non-reciprocal. E.g., Vino 100,
LLC, 2011 WL 2604338, at *8.

The one-year provision at issue in the franchise agreement
is likewise reasonable and enforceable and therefore not
substantively unconscionable. The Cesaroni Parties are parties
to a commercial transaction, not unsophisticated customers faced
with a "take it or leave it" consumer contract. The one-year
provision does not unreasonably favor MSF, as it gives the
Cesaroni Parties a reasonable amount of time in which to bring
any claims related to the franchise agreement. Cf. Alexander v.
Anthony Int'l, L.P., 341 F.3d 256, 266 (3d Cir. 2003) (finding
thirty-day contractual limitations period unreasonable).

Because the Cesaroni Parties have not established
substantive unconscionability, the Court need not reach the
issue of procedural unconscionability.

For the foregoing reasons, the one-year limitations period
governs Counts I, III, and IV.[6] The contractual limitations
period runs either from one year after the occurrence giving
rise to the cause of action or one year after the Cesaroni

---

[6]     MSF and Prasalowicz also argue the counterclaims are barred by the
applicable state statutes of limitations. Because the Court will apply the
contractual limitations period——which is shorter than the applicable
statutes——it need not address this argument.

Parties became aware of the occurrence, whichever comes first.
First Am. Compl. Ex. 1, at 145, ECF No. 62. MSF and Prasalowicz
argue the counterclaims are time barred because the Cesaroni
Parties admit they learned of the alleged wrongdoing in December
2016 but did not bring claims until 2019. See Am. Answer to
First Am. Compl. ¶ 172, ECF No. 84.

The Cesaroni Parties respond by pointing to their pleading,
in which they aver that the alleged tortious acts and violation
of contractual rights continued "through the termination of
KCLLC's franchise in November 2018," id. ¶ 177, which is within
one year of when KCLLC first filed its counterclaims.[7] They argue
the timeliness of the tort claims turns on when the last
tortious acts occurred, and the timeliness of the breach of
contract claim depends on when MSF and Prasalowicz's final
breach happened.

---

[7]    The Cesaroni Parties also argue their counterclaims are timely as a
recoupment defense. Recoupment is an equitable principle "that diminishes a
party's right to recover a debt to the extent that the party holds money or
property of the debtor to which the party has no right." In re Frescati
Shipping Co., 886 F.3d 291, 311 (3d Cir. 2018), aff'd sub nom. CITGO Asphalt
Ref. Co. v. Frescati Shipping Co., 140 S. Ct. 1081 (2020). Recoupment is not
subject to statutory or contractual limitations periods. However, "[t]he
defense is not intended to be a catch-all to allow any claims otherwise
barred" and is available "to allow only truly similar claims arising from the
same transaction to offset one another in the interest of equity between the
parties." Id. at 312. The defense is "well-suited for disputes in which two
claims arise out of the same . . . contractual obligation, as often seen in
tax or bankruptcy cases." Id. That is not the case here. The Cesaroni Parties
allege violations of the franchise agreement's exclusivity provisions, while
MSF and Prasalowicz principally allege breach of the non-compete covenant and
nonpayment. Therefore, the recoupment defense is unavailable.

16

A court should dismiss a complaint for failure to state a claim on statute of limitations grounds "only when the statute of limitations defense is apparent on the face of the complaint." Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017). Construing the facts in the light most favorable to the non-movant, it is unclear whether the Cesaroni Parties allege a single ongoing violation or multiple consecutive violations. Therefore, there is an insufficient record for the Court to determine at this time whether Counts I, III, and IV are timely under the one-year contractual limitations period.

For these reasons, the Court will not grant MSF and Prasalowicz's Motion to Dismiss the counterclaims as time barred and will leave the issue for resolution at the summary judgment stage.

### 2. Gist of the Action Doctrine

MSF and Prasalowicz also argue that Pennsylvania's "gist of the action" doctrine bars the counterclaims for interference with prospective contractual relations (Count III) and civil conspiracy based on tortious interference (Count IV). The doctrine bars tort claims "when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014).

Where "the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract," courts view the claim as one for breach of contract. Id. at 68. Conversely, where "the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract," courts view the claim as a tort. Id.

When considering whether the gist of the action doctrine bars the claim at issue, the procedural posture of the case is "crucially important," as courts may lack a sufficient record to make the determination until "after substantial discovery and motion practice." SodexoMAGIC, LLC v. Drexel Univ., 333 F. Supp. 3d 426, 456 (E.D. Pa. 2018), appeal filed, No. 19-1107 (3d Cir. 2019); see also Neopart Transit, LLC v. CBM N.A. Inc., 314 F. Supp. 3d 628, 638 (E.D. Pa. 2018) (denying motion to dismiss under the gist of the action doctrine because, "depending on the facts ultimately proven, [defendant] may have had fiduciary duties" extending beyond the scope of the contract at issue).

The Court has an insufficient record at this time to determine whether the counterclaims at issue sound in tort or in contract. Therefore, the Court will not dismiss Counts III and IV under the gist of the action doctrine and will leave the issue for resolution at the summary judgment stage.

3.    Parol Evidence Rule

MSF also argues the breach of contract counterclaim (Count I) relies on alleged statements barred by the parol evidence rule. The rule "mandates that when a 'written contract is clear and unequivocal, its meaning must be determined by its contents alone.'" United States v. Saferstein, 673 F.3d 237, 242 (3d Cir. 2012) (quoting Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 594 (3d Cir. 2009)). The rule applies if the writing at issue is integrated—i.e., if it "represents the entire agreement between the parties." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 994 (3d Cir. 1987). The parol evidence rule aims to "preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous oral declarations." Id. (quoting Rose v. Food Fair Stores, Inc., 262 A.2d 851, 853 (Pa. 1970)).

The Cesaroni Parties' breach of contract counterclaim alleges that MSF and Prasalowicz "affirmatively represented, orally and in writing, that the territory or territories acquired by KCLLC . . . would be exclusive, and that other providers of Mr. Sandless goods and services . . . would be excluded from the Territory during the term of franchise." Am. Answer to First Am. Compl. ¶ 156, ECF No. 84.

19

In support of their argument that the franchise agreement represents a complete integration of the parties' contract and therefore bars consideration of any representations not contained in the written agreement, MSF points to the agreement's integration clause:

> This Agreement contains the entire agreement between the parties concerning the Mr. Sandless franchise; no promises, inducements or representations not contained in this Agreement have been made, nor shall any be of any force or effect, or binding on the parties; provided, however, that nothing in this or any related agreement is intended to disclaim the representations made by us in the Disclosure Document that was furnished to you.

First Am. Compl. Ex. 1, at 146, ECF No. 62.

Even assuming, arguendo, that the parol evidence rule bars the alleged representations on which the Cesaroni Parties rely that are not contained in the franchise agreement and disclosure document, the remaining evidence they cite from the franchise agreement and disclosure document is sufficient to state a claim for breach of contract. The Cesaroni Parties' pleading points to several clauses in the franchise agreement and disclosure document that refer to territorial exclusivity. See Am. Answer to First Am. Compl. ¶¶ 159-161, ECF No. 84. They plausibly allege MSF and Prasalowicz violated those contractual provisions by "authorizing and arranging for MSCM and Pupillo to do

business in KCLLC's Designated Territory, and by concealing this activity from KCLLC." Id. ¶ 169.

Therefore, the Court will not dismiss Count I pursuant to the parol evidence rule.

### 4.   Relief Under Trademark Laws

Counts V and VI raise claims for relief under federal and state trademark laws, respectively. The Cesaroni Parties seek attorneys' fees and expenses pursuant to the statutes.

Under the Lanham Act——the federal statute governing trademarks——a court may award reasonable attorneys' fees to the prevailing party in "exceptional" cases. 15 U.S.C. § 1117. A case is "exceptional" if: "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 315 (3d Cir. 2014) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)). Whether litigation positions or tactics are sufficiently exceptional to merit attorneys' fees "must be determined by district courts 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" Id. (quoting Octane Fitness, 572 U.S. at 554).

The Cesaroni Parties also seek relief under Pennsylvania's Trade Secrets and Trademark Acts. Under the state's Uniform Trade Secrets Act, a court "may award reasonable attorney fees, expenses and costs to the prevailing party" if, inter alia, "a claim of misappropriation is made in bad faith." 12 Pa. Stat. and Cons. Stat. Ann. § 5305 (West 2020). Under the Trademark Act, a court may award attorneys' fees to the prevailing party "where the court finds the other party committed . . . wrongful acts with knowledge or in bad faith." 54 Pa. Stat. and Cons. Stat. Ann. § 1125 (West 2020).

Prasalowicz argues the Court should dismiss these counterclaims against him because MSF, not Prasalowicz, brought suit against the Cesaroni Parties. The Court agrees. The Cesaroni Parties challenge the trademark infringement action MSF brought and prosecuted against them. Because Prasalowicz brought no such action, the Cesaroni Parties cannot plausibly allege that there is an "unusual discrepancy" in the merits of the parties' positions, that Prasalowicz litigated a case against them in an "unreasonable manner," or that he made a claim in bad faith, as required to state a claim for relief under federal and state trademark laws. See Fair Wind Sailing, 764 F.3d at 315; 12 Pa. Stat. and Cons. Stat. Ann. § 5305 (West 2020). Therefore, the Court will dismiss Counts V and VI against Prasalowicz.

22

For its part, MSF argues the Court should dismiss Counts V and VI against it because the Cesaroni Parties fail to allege bad faith. This argument is unpersuasive. The Cesaroni Parties argue that MSF brought suit against them for trademark infringement, inter alia, without conducting a thorough pre-litigation investigation and despite the fact that the Cesaroni Parties did not continue to trade as "Mr. Sandless" after the termination of their franchise. Taken as true, these allegations plausibly state a claim for recovery under federal and state trademark laws. Of course, whether the Court will ultimately determine that the Cesaroni Parties' case is "exceptional" within the meaning of the Lanham Act or that MSF and Prasalowicz acted in bad faith, as required to recover under Pennsylvania trademark laws, is another question for another day.

For the foregoing reasons, the Court will grant the Motion to Dismiss Counts V and VI against Prasalowicz and deny the Motion to Dismiss Counts V and VI against MSF.

### 5.   Mediation

MSF and Prasalowicz highlight in their Motion to Dismiss that "the Agreement on which the entire action is based requires mandatory mediation of the Defendants' claims using a well-defined and fair procedure set forth in the Agreement, which Defendants ignored." Countercl. Defs.' Mot. Dismiss 2, ECF No.

86-1. However, they do not move to compel mediation or to stay the proceedings pending alternative dispute resolution. It is unclear whether MSF and Prasalowicz argue that the Cesaroni Parties' failure to seek mediation warrants dismissal, or whether they raise this fact only to bolster their argument that "Defendants wish to sue under certain provisions of the [franchise agreement] but forgo others." Id. at 5.

The relevant portion of the franchise agreement states:

> At our option, all claims or disputes between you and us or our affiliates arising out of, or in any way relating to, this Agreement, or any of the parties' respective rights and obligations arising out of this Agreement, shall be submitted first to mediation in Delaware County, Pennsylvania . . . . Before commencing any legal action against us or our affiliates with respect to any such claim or dispute, you must submit a notice to us which specifies, in detail, the precise nature and grounds of such claim or dispute. . . . You may not commence any action against us or our affiliates with respect to any such claim or dispute in any court unless we fail to exercise our option to submit such claim or dispute to mediation, or such mediation proceedings have been terminated. . . . Our rights to mediation, as set forth herein, may be specifically enforced by us.

First Am. Compl. Ex. 1, at 144, ECF No. 62.

The Cesaroni Parties respond that "if MSF was ever entitled to mediate, it has long since waived that right." Countercl. Pls.' Br. Opp'n to Countercl. Defs.' Mot. Dismiss 33, ECF No. 87. At the October 22, 2019, hearing before the Court, counsel

for the Cesaroni Parties argued that because MSF and Prasalowicz sued them "based on the same set of facts that give rise to [the Cesaroni Parties'] counterclaim . . . and defenses" rather than pursuing mediation, they waived any right to mediate the counterclaims. Oral Arg. Tr. 39:13-16, ECF No. 46.

To the extent that MSF and Prasalowicz argue the Court should dismiss the counterclaims for failure to mediate, the Court concludes that they have waived any right they may have had to mediate the counterclaims by engaging in active litigation over a sustained period of time. Given their litigation history, MSF and Prasalowicz have acted inconsistently with any right to mediate. They have not moved to compel mediation or moved to stay the proceedings pending alternative dispute resolution. Further, MSF placed the controversy before the Court by filing suit rather than seeking mediation, and the Cesaroni Parties' counterclaims arise out of the same franchise agreement that gives rise to MSF's claims.

For these reasons, the Court will not dismiss the counterclaims for failure to mediate.

### 6.   Claims against Prasalowicz

Finally, Prasalowicz argues the Cesaroni Parties cannot bring claims against him in his individual capacity because they have not pled that he was acting beyond the scope of his

25

employment. However, under Pennsylvania law, "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." Donsco Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978); see also Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 89 (Pa. 1983). Therefore, the Cesaroni Parties need not plead that Prasalowicz acted beyond the scope of his employment with respect to their tort claims. Further, the breach of contract counterclaim names only MSF as a counterclaim defendant, and the Court will dismiss the trademark claims against Prasalowicz. See supra Section IV.B.4.

Therefore, the Court will not dismiss the remaining claims against Prasalowicz.

## V.   CONCLUSION

For the foregoing reasons, the Court will dismiss the counterclaims against MSCM and Pupillo for lack of personal jurisdiction. The Court will dismiss Counts V and VI against Prasalowicz for failure to state a claim and will deny MSF and Prasalowicz's Motion to Dismiss the remaining counterclaims. An order consistent with this memorandum will issue.